## Warfield Natural Gas Company v. Muncy et al.

(Decided May 24, 1932.)

KIRK & KIRK for appellant.

W. R. McCOY for appellees.

OPINION OF THE COURT BY JUDGE RICHARDSON—Affirming.

The questions for determination in this case are whether the accident which caused the death of John L. Muncy occurred while he was acting within the scope and in the course of his employment as a teamster, and whether there is any evidence bearing on this issue to sustain the award of the Workmen's Compensation Board. The facts are as follows: John L. Muncy and James Smith, teamsters employed by the Warfield Natural Gas Company, on the 24th day of September, 1928, were each in charge of a team and wagon on the Garrett highway. The road was up Tug river, a fork of the Big Sandy river, and was being constructed by a contractor working under a contract with the state highway commission of Kentucky. At the place where Muncy suffered the injury which caused his death, a fill was being made to take the place of a bridge which required the traffic to make a short detour, coming back into the road just above the mouth of Collins creek, a short distance above where the detour road intersected the main highway. A steam shovel was being operated, from which trucks were hauling dirt onto the road where the fill was being made. At the intersection of the two roads, the road under construction was blocked near the steam shovel by dirt and rock. Muncy and Smith left their teams in the old or detour road, traveled the new road to the steam shovel. On reaching it, they asked the shovel runner when they would be able to pass on the new road. He told them "it would be a little bit before they could get by." After talking with him a few minutes, they came down the side of the road, stopped near a cliff, crossed over the road next to the river, and sat in the shade of a

tree, where they remained for 30 or 45 minutes. Then, according to Smith, they started "to pull" the teams "up in the shade." Smith stepped in front of Muncy, crossed the road, going in the direction of his team, and, while doing so, he heard some one hollow; he looked up, and a truck, which was being used by the highway department, "was on Muncy, on his leg." Muncy's team was about 150 feet from where the shovel runner was operating the steam shovel. On making the return trip, Smith traveled on the side of the road on which his team was standing. His team at the time was about 100 feet from the tree where he and Muncy had stopped and remained 30 or 45 minutes. Muncy and Smith had made previous trops, traveling this highway with their teams while transporting pipe to Kermit, W. Va. When making some of them, they were permitted to pass without stopping, and, on other occasions, they would have to stop and remain some time before passing the steam shovel. At the time Muncy was struck by the truck he was about 15 or 20 feet from Smith. Muncy was on the new road just below where the old road came into it, within a few feet of the old road.

Smith did not know the exact point at which Muncy was struck by the truck or whether he was standing or walking. His judgment was that he was following him toward the teams, just off the road they used for hauling pipe. The truck at the time it struck Muncy was loaded with dirt and rock and moving backward.

The Warfield Natural Gas Company and Muncy had accepted and were working under the Workmen's Compensation Act. His widow made application to the Workmen's Compensation Board for adjusted compensation as authorized by section 4880 et seq., Ky. Statutes. The Workmen's Compensation Board, on the evidence presented, awarded to the widow of Muncy, for herself and infant children, compensation at the rate of $12 per week for a period of 335 weeks, not to exceed $4,000, with interest on all past due payments, and $75 for actual burial expenses. The Warfield Natural Gas Company filed a petition for review by the full board. It sustained the award which had been theretofore made. Under the provisions of section 4935, Ky. Statutes, the company by petition sought a review by the circuit court of Martin county, wherein a decree was entered sustaining the award of the board, from which it prosecutes this appeal.

It is practically conceded by the appellant that Muncy met his death under the conditions and circumstances shown by the evidence of the appellee, but it is most earnestly and diligently argued that under the generally accepted construction of sec. 4880, Ky. Stats., he did not sustain the injury which caused his death, "by accident arising out of and in the course of his employment." To sustain its argument appellant cites and relies on many authorities, too numerous to list herein. The rule deducible from them is, that where an employee at the time and place of his injury is engaged in his own business, purpose, or pleasure, or is injured on his way back therefrom to where he should be to do his duty, such injury is not compensable under the Workmen's Compensation Act. The theory of appellant is abundantly and thoroughly suported by the authorities it cites. But the determinative, relative facts in the present case plainly take it out of its theory and easily distinguish it from the cases cited by it.

In Phil Hollenbach Co. v. Hollenbach, 181 Ky. 262, 204 S. W. 152, 158, 13 A. L. R. 524, and January-Wood Co. v. Schumacher, 231 Ky. 705, 22 S. W. (2d) 117, the term "arising out of" and the words "in the course of his employment" were considered by this court, and the distinction between them was compared and clearly made. The language of the statutes "arising out of and in the course of his employment" imposes a double condition on the applicant for adjusted compensation; i. e., the burden of proving the injury arose "in the coure of" and also "out of" his employment. Evidence of the one without proof of the other will not bring the case within the statutes. A claimant asserting such claim must show "an occupational injury" (Larke v. John Hancock Mutual Life Ins. Co., 90 Conn. 303, 97 A. 320, L. R. A. 1916E, 584; January-Wood Co. v. Schumacher, supra), and that there was some causative connection with the injury, and something peculiar to the employment (Griffith v. Cole Brothers, 183 Iowa 415, 165 N. W. 577, L. R. A. 1918F, 923; Walker v. Hyde, 43 Idaho 625, 253 P. 1104; McNicol's Case, 215 Mass. 497, 102 N. E. 697, L. R. A. 1916A, 306).

Whether an injury or death "arises out of" and "in the course of" employment must necessarily be determined by the facts and the attendant circumstances of each particular case. Argument by analogy is often of no assistance in determining the question.

Mr. Schneider, vol. 1 (2d Ed.), Workmen's Compensation Law, p. 742, states nine rules helpful in such cases, as formulated by the English writer Ruegg, as follows:

"1. That the onus of proving both that the accident arose out of and in the course of employment, rest upon the applicant. 2. That the accident does not arise out of and in the employment if it is caused by the workman doing something entirely for his own purposes; or 3. The same result follows when the workman does something which is not part of his duty toward his employer, and which he has no reasonable grounds for thinking it was his duty to do. 4. The accident may arise out of and in the course of the employment, if the act which occasioned it, although not strictly in the scope of the wormen's employment, is done upon an emergency. 5. It may be said to arise out of the employment if, it being the workmen's duty to do the act, the accident arises from his doing it in an improper manner. 6. It may arise out of and in the course of the employment, it occurring on the employer's premises. 7. It may arise out of and in the course of the employment, if, the workman's duties not being clearly defined, he may reasonably have thought it was a duty to do the thing in the course of which the accident occurred. 8. It does not arise out of and in the course of the employment, if occasioned by the willful tortious act of a fellow servant, when the risk of such an act cannot be said to be one of the risks incidental to the service. 9. It may arise out of and in the course of the employment if, though occasioned tortiously, even willfully, by the act of a third party, the risk of injury from such acts is found to be one of the risks incidental to the employment."

Applying these rules to the undisputed facts in the present case, it is apparent that at least rule 7 is controlling.

It is argued by the appellant that from the moment Muncy and Smith left their teams and wagons on the road, and "went up to" the compressor which was being used on the road construction, and from there to the point at the tree on the river where they remained from 30 to 45 minutes, discussing a personal matter, and

thence to the point where the accident occurred, which caused his death, Muncy was "out of" and not "in the course of" his employment, and that therefore he is not entitled to adjusted compensation. Smith's explanation of their purpose in approaching, and talking with, the shovel runner is a natural and reasonable one. They were endeavoring to speed up the passing by the road machinery and work, with their teams and wagons, for the benefit of their employer. The highway was blocked without fault on their part, and they were attempting to secure information of the shovel runner in order to promote the business of their employer, and were not engaged in satisfying their curiostiy or in pleasure seeking or serving their own purpose. When so obtaining information, they were not acting to promote their own personal interests or private affairs. No directions or instructions had been given to them by their employer to control their actions under such circumstances. It was their duty as loyal servants to exercise their best judgment under these circumstances and to do that which in their best judgment was to the ultimate interest of the business of their employer. Harlan Gas Coal Co. v. Trail, 213 Ky. 226, 280 S. W. 954; Keaney's Case, 232 Mass, 532, 122 N. E. 739; Schneider on Workmen's Compensation, vol. 1, sec. 271, p. 809.

Without going to the steam shovel and making inquiry of the shovel runner, they inevitably would have had to remain without information until the traffic in the usual course of travel began to pass the shovel, but, by making inquiry of the shovel runner, it was anticipated he would let them pass sooner.

A workman may do those things which any reasonable person might do under similar circumstances, without taking himself outside the scope of his employment, although not strictly in the line of duty or course of his employment. Koch v. Oakland Brewing & Malting Co., 1 Cal. I. A. C. Dec. 373; Phil Hollenbach Co. v. Hollenbach, supra.

In May v. Ison (1914 W. C. Ins. Rep.), Eng. 41, 110 L. T. N. S. 525, B. W. C. C. 148, it was held that a workman who was instructed to obtain a barge at a wharf, but on going there found he would not be able to get it for some time because of the condition of the tide, did not go outside the ambit of his employment in attempting to get into a small boat in which he could sit down

and watch the tide until the time was more favorable for him to perform his work.

In Bryant v. Fissell, 84 N. J. Law, 72, 86 A. 458, it was held that an accident arises "in the course of the employment" if it occurs while the employee is doing what a man so employed may reasonably do in the time during which he is reasonably employed and at a place where he may reasonably be during that time, and it arises "out of" the employment when it is something the risk of which may have been contemplated by a reasonable person, when entering the employment, as incidental thereto. State ex rel. Duluth Brewing & Malting Co. v. Dist. Ct., 129 Minn. 176, 154 N. W. 912; McNicol's case, 215 Mass. 497, 102 N. E. 697, L. R. A. 1916A, 306; Schneider's Workmen's Compensation Law, vol. 1 (2d Ed.), p. 740.

A workman who is obliged to wait for a suitable time before the active discharge of his duty begins, or on account of an unexpected cessation thereof, must be allowed some freedom of choice as to the particular place at which he will spend his time. As Milton wrote, "They also serve who only stand and wait."

This principle is logically consistent with the prevailing rule that the statute does not make "the employer an insurer against all accident injuries which might happen to an employee while in the course of the employment, but only for such injuries arising from or growing out of the risks peculiar to the nature of the work in the scope of the workmen's employment or incidental to such employment and accidents in which the employee is exposed in a special degree by reason of such employment. Risks to which all persons similarly situated are equally exposed and not traceable in some special degree to the particular employment are excluded." Schneider on Workmen's Compensation, vol. 1, sec. 262. The tendency of modern decisions is to regard the spirit and purpose of the law and to award compensation in all cases where a liberal construction of the statute will justify it. Schneider's Workmen's Compensation Law, vol. 1, p. 262, sec. 734. Section 4987, Ky. Statutes, is in harmony with this principle, which should be regarded in every case both by the Workmen's Compensation Board and the courts.

It may be safely stated the argument that the deceased, in his good faith endeavor to obtain information

from the shovel runner, and in his faithful effort to speed up the passing of his team and wagon, and in his returning to his team to await an opportunity to pass, had left his master's service, while doing so, and was engaged on his own account by virtue thereof, is illogical and unreasonable to a degree. Hannold on Workmen's Compensation Law (2d Ed.), vol. 2, sec. 271, p. 809.

The nature of the work in which Muncy was engaged required his presence on and use of the public highway, and he was not using it merely as a member of the traveling public at the time he suffered the injury but was using it in the course of his employment while in the discharge of a duty he owed his employer. Clark v. Voorhees, 194 App. Div. 13, 184 N. Y. S. 888; Davis v. North State Veneer Corp., 200 N. C. 263, 156 S. E. 859. It was a highway risk to which his work subjected him. He was working in furtherance of his employer's interest. Schneider's Workmen's Compensation Law (2d Ed.) vol. 1, sec. 272, p. 818, and cases cited; Palmer v. Main, 209 Ky. 226, 272 S. W. 736; Fischer v. Stephens College of Columbia (Md. App.), 47 S. W. (2d) 1101.

The facts here are not disputed, and the question becomes one of law. Consolidation Coal Co. v. Ratliff, 217 Ky. 103, 288 S. W. 1057. If there were any doubts in the minds of the members of the board in determining the weight of the evidence, they were properly resolved in favor of the employee. Betz v. Telephone Co., 224 Mo. App. 1004, 24 S. W. (2d) 224. The finding of the Workmen's Compensation Board is supported by competent and relative evidence, and we are without authority to interrupt its finding. Creech Coal Co. v. Smith, 234 Ky. 166, 27 S. W. (2d) 686; McCombs Coal Co. v. Alford, 234 Ky. 42, 27 S. W. (2d) 430; Harlan Gas Coal Co. v. Laws, 234 Ky. 654, 28 S. W. (2d) 990; Black Star Coal Co. v. Collins, 236 Ky. 39, 32 S. W. (2d) 540.

Judgment affirmed.