## Tuggle v. City of Barbourville.

May 18, 1943.

Kenneth H. Tuggle and William Crutcher, Jr., for appellant.

J. J. Tye and P. D. Black for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Affirming.

On September 4, 1942, the city council of Barbourville (4th class) passed an ordinance providing for the is-

suance of 4 per cent bonds to the amount of $33,000, to be retired at regular periods, the last to mature in 1962. The form of bond which appears to follow the usual and customary pattern is set out in the ordinance. It was stated in the ordinance that the bonds were to be issued to meet an outstanding indebtedness of the city evidenced by existing judgments to the extent of more than $30,000, the judgments bearing 6% interest from their respective dates, and which judgments had become final. Proceeds of the sale of the bonds when issued were to be used solely for the purpose of retiring the indebtedness, the judgments to be released coincidentally with the delivery and sale of the bonds. There was a provision also for the levying of a tax to meet the retirement of the bonds and accrued interest. It was also stated that all judgment creditors had agreed to make some concession in amounts due each so as to make possible the satisfaction of their several judgments in full, including costs, by application of the proceeds arising from the sale of the bonds.

Shortly thereafter the city filed its petition in which it set up the facts above substantially stated, asking for declaration of rights (Civil Code of Practice, sec. 639a—1 et seq.), and that the court hold that the proposed issue was to provide for meeting an indebtedness within the constitutional limits governing the creation of such indebtedness, and within the limitations in cities of the Barbourville class.

Further, that each item of noted indebtedness created by the city, still unpaid and owing, during the period in which the several indebtednesses were created, were at the time of creation valid and binding obligations; that the bonds constituted legal and valid obligations of the city, enforceable according to their import, and that the city officers had exercised due regard for the affairs of the city.

Appellant, a citizen, resident and owner of real property in the city was made defendant, as a representative of all citizens who were similarly situated. He entered appearance, and the court upon motion directed that he be permitted to defend for himself and all citizens of Barbourville. The court overruled appellant's demurrer, and there being no further pleading the cause was submitted on pleadings, exhibits and proof. The court held the proposed issue to be valid, and declared

the rights to be as above set out. In brief on behalf of appellant it is admitted that the court's conclusions were sound in every particular, but it is suggested the appeal was taken for the purpose of having more certain determination of the rights of all parties interested.

Section 158 of the Constitution provides that a city of the class here is prohibited from incurring an indebtedness to an amount, including existing indebtedness, in the aggregate exceeding 5% on the value of the taxable property therein, based on the last assessment previous to the incurring of the indebtedness. It was shown by proof that the city at the time of the passage of the ordinance did not owe any debts, except such as were evidenced by the several judgments against the city, payment of all of which were sought to be met by the proceeds from the sale of the bonds, which would result in a saving of 2% annually. Current expenses could be met regularly, if the city be relieved of the burden placed upon it by the court's decree mentioned below.

It was also shown at the time it was living within its income, not creating indebtedness, and that for several years last past its affairs had been conducted in a wholesome and business-like manner. It was shown that the assessment of taxable property in the city for the year 1941 was $1,393,722; slightly less for the two years preceding. It was also shown that 30 per cent of the levy of 75c on the $100 property valuation had been set aside as noted below for the purpose of and had been applied in meeting payment of these obligations, which action materially interfered with the proper conduct of the city in meeting necessary obligations and carrying on its governmental functions.

It appears from the record that in 1936 all the cases in which judgments had been rendered against the city, some prior to 1930, none after 1936, were in a proceeding for mandamus against the city, consolidated, with the result that the city was compelled to set aside the 30 per cent of the 75c per $100 property valuation, for the purpose above stated. The various judgments are set out in the pleadings, exhibits and proof, and it appears that at regular monthly periods those judgments have been credited by the payments made on the court's mandatory order. The city clerk testified as to judgments and gave totals as of the time, but said there was to be added interest to accrue thereafter.

We shall not attempt to list these judgments; they ranged in balances due from $475 to one (made up of numerous items) of about $22,000. Three of them were for money borrowed prior to 1936 from banking institutions for the purpose of governmental operations of the city, including salaries of officers. One was for moneys due to contractors on street building apportionments, where the properties abutting the streets were known as "pauper properties," not of sufficient value to meet the assessments. The remaining judgments were for amounts, or balances, due to various supply concerns for fire apparatus, fire hose; to the Utilities Company for rental of fire plugs and water supply, and a long overdue balance on the purchase price of utility plant.

The court below had before it the proceedings and judgments in the various cases, including the consolidated case, and they are filed here with the transcript. It appears from them, and the judgment rendered in this case that the obligations were incurred for what are termed "governmental purposes." This being true, our rulings in First National Bank v. City of Princeton, 273 Ky. 601, 117 S. W. (2d) 210, 211, where the facts were similar, prior judgments having been rendered, and then in force and effect, control. We said there, "We are not inclined to go behind those judgments or to disturb the chancellor's finding that they were and are valid." To the same effect, substantially, are Williams v. Taylor County, 274 Ky. 217, 118 S. W. (2d) 526; McHargue v. Laurel County, 270 Ky. 638, 110 S. W. (2d) 419, and Root v. City of Newport, 273 Ky. 604, 117 S. W. (2d) 594. The record shows that the indebtedness sought to be refunded was incurred for the purposes and in the manner stated, and that being valid obligations at the time within the purview of secs. 157 and 158 of the Constitution, there is nothing in Payne v. City of Covington, 276 Ky. 380, 123 S. W. (2d) 1045, 122 A. L. R. 321, which would prevent a holding that the proposed issue is valid. Mitchell v. City of Glasgow, 288 Ky. 512, 156 S. W. (2d) 824.

Judgment affirmed.